**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CLARK CONSULTING, LLC,<br>a Delaware limited liability corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HERITAGE LIFE<br>INSURANCE COMPANY,<br>a Florida corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:10-cv1697-D<br><br>Judge Sidney A. Fitzwater |

**PLAINTIFF CLARK CONSULTING, LLC'S**
**MOTION TO COMPEL PRODUCTION OF ESI AND FOR SANCTIONS**

Robert A. Chapman
Peter M. Spingola
Sara Siegall
**Chapman & Spingola, LLP**
77 West Wacker Drive, Suite 4800
Chicago, IL 60601
312/630-9202
*Lead Counsel*

Gregory T. Meyer
**Meyer & Colegrove, PLLC**
5700 Granite Parkway, Suite 470
Plano, TX 75024
972-334-0091
I.D. No. 13989800
*Local Counsel*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATEMENT OF MATERIAL FACTS ..................................................................... 2

A. AHL's Failure to Produce a Single Piece of Responsive ESI Strongly Suggests that AHL's Efforts to Identify, Search for, and Preserve Responsive ESI Were Inadequate ........................................................................................................2

i. AHL's Efforts to *Identify* Responsive ESI Were Inadequate because AHL Failed to Identify all AHL Custodians who May Possess Responsive ESI ........................................................................................3

ii. AHL's Efforts to *Search for* Responsive ESI were Inadequate because AHL has Provided no Proof that neither AHL nor Allstate Maintain any ESI Backup Storage Systems ......................................................................4

iii. AHL's Efforts to *Preserve* Responsive ESI were Inadequate because AHL Likely Lost or Destroyed Responsive ESI..............................................4

B. AHL Has Indicated that if AHL were to Produce ESI, AHL would not Produce ESI in a Format that Includes all Metadata and Is Reasonably Accessible to Clark ..........5

ARGUMENT .............................................................................................................. 6

I. The Court Should Compel AHL to Make a Reasonably Thorough Inquiry into all Potential Sources or Responsive ESI........................................................................6

a. AHL Should Identify and Produce all Responsive ESI Possessed by any AHL Custodians who may Possess Responsive ESI .......................................................7

b. AHL Should Produce Proof that neither AHL nor Allstate Maintains any Backup Storage Systems for ESI ..................................................................................9

c. AHL Should Identify all Responsive ESI that AHL has Lost or Destroyed since 2007 ...........................................................................................................10

II. The Court Should Compel AHL to Produce all Responsive ESI in a Format that Includes all Metadata and that is Reasonably Accessible to Clark...................................11

III. If AHL Failed to Make a Reasonably thorough Inquiry for ESI, the Court Should Order AHL to Reimburse Clark's Costs and Attorneys' Fees Incurred in Connection with this Motion and Order Sanctions against AHL and its Counsel for Violating Rule 26(g)...........................................................................................13

IV. In the Alternative, if AHL Contends that it Possesses no Responsive ESI, the Court Should Compel AHL to Recertify, pursuant to Rule 26(g), that its Document Production is Complete ....................14

CONCLUSION .................... 14

# TABLE OF AUTHORITIES

## Cases

*A. Farber & Partners, Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006). .......... 7

*Bd. of Regents of Univ. of Neb. v. BASF Corp.*,
No. 4:04CV3356, 2007 WL 3342423 (D. Neb. Nov. 5, 2007). .......... 6

*Cache la Poudre Feeds v. Land O'Lakes, Inc.*,
244 F.R.D. 614 (D.D.C. 2008). .......... 6

*Covad Comm. Co. v. Revonet, Inc.*,
254 F.R.D. 147 (D.D.C. 2008). .......... 11

*Dahl v. Bain Capital Partners*,
655 F. Supp. 2d 146 (D. Mass. 2009.) .......... 11

*Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*,
132 F.R.D. 204 (N.D. Ind. 1990). .......... 6, 11, 14

*Intagio Corp. v. Tiger Oak Pubs., Inc.*,
No. C-06-3592 PJH (EMC), 2007 WL 420245 (N.D. Cal. Feb. 5, 2007). .......... 13

*Kipperman v. Onex Corp.*,
260 F.R.D. 682 (N.D. Ga. 2009). .......... 13

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*,
212 F.R.D. 178 (S.D.N.Y. 2003). .......... 7, 13

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
115 F.R.D. 543 (N.D. Cal. 1987.) .......... 8

*Nursing Home Pension Fund v. Oracle Corp.*,
254 F.R.D. 559 (N.D. Cal. 2008). .......... 8

*Peskoff v. Faber* (*Peskoff I*),
Civil Action No. 04-526, 2006 WL 1933483 (D.D.C. July 11, 2006) .......... 8

*Romero v. Allstate*,
271 F.R.D. 96 (E.D. Penn. 2010). .......... 11, 12

*Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*,
No. 09-23411-CIV, 2011 WL 772855 (S.D. Fla. Feb. 19, 2011.) .......... 9

*Williams v. Sprint/United Mgmt. Co.*,
230 F.R.D. 640 (D. Kan. 2005). .......... 12

*Zubulake v. UBS Warburg LLC* (*Zubulake I*),
217 F.R.D. 309 (S.D.N.Y. 2003). ........................................ 9

*Zubulake v. UBS Warburg LLC* (*Zubulake IV*),
220 F.R.D. 212 (S.D.N.Y. 2003). ........................................ 10

**Other Authorities**

Fed. R. Civ. P. 26(g). ........................................ 6

Fed. R. Civ. P. 26(g)(3)........................................ 13

Fed. R. Civ. P. 34(b)(1)(C) ........................................ 11

Fed. R. Civ. P. 34(b)(2)(D)........................................ 11

Fed. R. Civ. P. 34(b)(E)(2). ........................................ 11

Fed. R. Civ. P. 37(e). ........................................ 10

## INTRODUCTION

This motion to compel is the direct result of American Heritage Life Insurance Company's ("AHL") failure to produce *any* electronically stored information ("ESI"). Even though Clark Consulting, Inc. ("Clark") has produced nearly 21,000 electronic documents, AHL—a division of Allstate Insurance Company ("Allstate") and thus a very sophisticated party with the information technology and legal resources necessary to properly store, manage, search, and produce ESI—has failed to produce a single piece of ESI. Because AHL and its counsel have been less than forthcoming with explanations for this gross deficiency, Clark has been forced to draw its own conclusions. Specifically, the lack of ESI in AHL's production strongly suggests that AHL's and its counsel's efforts to identify, search for, and preserve responsive ESI were inadequate in the following ways:

- AHL failed to identify and search for ESI from all present and former AHL employees who may possess responsive ESI;
- AHL failed to provide any proof that neither AHL nor Allstate maintain any backup storage systems that possibly contain responsive ESI; and
- AHL likely lost or destroyed responsive ESI.

Additionally, AHL has taken the improper position that if it does produce ESI, it will produce it only in portable data format ("PDF").

AHL's failures to identify, search for, and preserve responsive ESI violate the Federal Rules of Civil Procedure 26, 34, and 37 (the "Rules"). Additionally, AHL's failures have significantly delayed the resolution of this matter and increased Clark's expenses. Accordingly, Clark respectfully asks this Court to enter an order (i) requiring AHL to make a reasonably thorough inquiry into all possible sources of responsive ESI and to produce all ESI in a format

that includes all metadata and that is reasonably accessible to Clark and (ii) requiring AHL to reimburse Clark for its costs and attorneys' fees incurred in connection with this motion and sanctioning AHL and its counsel for violating Rule 26(g). In the alternative, if the Court finds that AHL has identified and produced all responsive ESI, Clark respectfully requests that the Court enter an order requiring AHL to recertify, pursuant to Rule 26(g), that its documents production is complete.

## STATEMENT OF MATERIAL FACTS

### A. AHL's Failure to Produce a Single Piece of Responsive ESI Strongly Suggests that AHL's Efforts to Identify, Search for, and Preserve Responsive ESI Were Inadequate

1. On April 21, 2011, AHL produced 643 pages or approximately 200 documents, 18 of which are emails. (App. at 5.)

2. In contrast, Clark has produced almost 21,000 responsive electronic documents, including thousands of pages of emails and other electronic documents that were exchanged between AHL and Clark during their longstanding business relationship.[1] (*See* App. at 28.)

3. AHL contends that its 643-page production includes *all* of AHL's responsive ESI. (*See* App. at 9-10.)

4. However, Clark cannot identify *any* ESI in AHL's document production. Instead, each document that AHL produced appears to be either a scanned, PDF version of ESI that AHL printed and maintained in hard copy or a document that was maintained only in hard copy (*e.g.*, original, signed agreements). In support of this conclusion, Clark points to the following:

- Email messages contain handwritten comments and notations (App. at 29);
- Email messages omit the original attachments (App. at 30);

---

[1] For a detailed account of Clark's efforts to identify, search for, review, and produce ESI, see Declaration of Sara Siegall. (App. at 19-27.)

- Documents have been highlighted (App. at 31);
- Documents have been stapled (App. at 32); and
- Documents were stamped "CONFIDENTIAL" by hand, not electronically (App. at 29-32).

5. AHL's failure to produce even a single piece of responsive ESI strongly suggests that AHL's efforts to identify, search for, and preserve responsive ESI were inadequate.

**i. AHL's Efforts to *Identify* Responsive ESI Were Inadequate because AHL Failed to Identify all AHL Custodians who May Possess Responsive ESI**

1. In searching for responsive ESI, AHL interviewed only those custodians who were identified as initial Rule 26 witnesses and who are within AHL's control. (App. at 12-13.)

2. As a result, AHL likely interviewed no more than eight custodians. (App. at 12-13, 34, 38-42.)

3. When Clark's counsel reviewed the approximately 200 documents that AHL has produced, they discovered at least 18 additional AHL employees who were either senders and/or recipients of emails exchanged between AHL and Clark. (*See* App. at 13, 16.)

4. On August 12, 2011, Clark asked AHL to disclose "what efforts AHL ha[d] made to determine whether any custodians within its control, who have not been named as Rule 26 witnesses, nevertheless possess ESI that may be responsive to Clark's discovery." (App. at 13.)

5. Clark alerted AHL to the 18 additional AHL employees whom Clark identified as likely possessing responsive ESI but whom AHL did not identify as initial Rule 26 witnesses. (*See* App. at 13, 16.)

6. Nevertheless, AHL has taken the position that it is not obligated to search for ESI in the possession of any AHL custodians other than those initial Rule 26 witnesses who are currently within AHL's control. (App. at 3.)

7. Recently, while reviewing AHL's production of hard copy documents in Jacksonville, Florida, Clark's counsel identified additional AHL employees who possessed responsive ESI but who are not identified as initial Rule 26 witnesses. For example, Curtiss Sheldon, the Senior Vice President and Chief Actuary, was heavily involved in administering many of the insurance policies at issue in this case. (*See* App. at 46.)

### ii. AHL's Efforts to *Search for* Responsive ESI were Inadequate because AHL has Provided no Proof that neither AHL nor Allstate Maintain any ESI Backup Storage Systems

1. AHL has taken the position that the lack of ESI in its document production is due, in large part, to AHL's document retention policy, which mandates the frequent deletion of ESI. (*See* App. at 7, 17.)

2. AHL has alleged that its document retention policy would "make clear that no 'back-up system' exists." (App. at 17.)

3. Clark has made many requests for a copy of AHL's purported document retention policy. (App. at 7, 14.)

4. Most recently, AHL's counsel represented on September 1, 2011 that AHL would produce the policy no later than September 9, 2011 (App. at 14), but AHL has not done so.

5. AHL has provided Clark with no evidence that supports its assertion that AHL and/or Allstate do not maintain any backup storage devices for ESI.

### iii. AHL's Efforts to *Preserve* Responsive ESI were Inadequate because AHL Likely Lost or Destroyed Responsive ESI

1. On July 7, 2011, Clark reminded AHL of its obligation to prevent the destruction of relevant documents. (App. at 7-8.)

2. AHL's only response was that it has "fully complied with its obligations under the federal rules." (App. at 10.)

3. The lack of ESI in AHL's document production raised concerns by Clark about whether AHL implemented a timely and proper litigation hold.

4. On August 12, 2011, Clark requested that AHL "describe any efforts on AHL's part from 2007 forward to preserve ESI relevant to the dispute between AHL and Clark." (App. at 14.)

5. On September 1, 2011, AHL's counsel represented that it would "follow up on the document hold issue" (App. at 17), but AHL's counsel has failed to do so.

6. AHL has failed to disclose whether it implemented a litigation hold to prevent the continued destruction of responsive documents.

**B. AHL Has Indicated that if AHL were to Produce ESI, AHL would not Produce ESI in a Format that Includes all Metadata and Is Reasonably Accessible to Clark**

1. At the outset of discovery, AHL's counsel took the position that if and when AHL produced ESI, AHL would produce ESI in PDF only.[2] (App. at 2.)

2. AHL took this position in spite of Clark's request, pursuant to Rule 34(b)(2)(E), that AHL produce all documents as native-files in a Concordance[3] load file. (App. at 1-2.)

3. Statements made by AHL's counsel during the course of this litigation indicate that AHL has the ability to produce ESI in a more economical and user-friendly format. AHL's counsel has represented that it works with a third-party vendor to review and produce documents and that, as part of that process, the vendor processes all of AHL's documents into a Summation-

---

[2] When AHL made its non-ESI document production, the production contained the scanned images of approximately 200 hard-copy documents merged into a single, password-protected PDF file. (App. at 5.) As a result, Clark was forced to expend considerable time and money to reformat those documents so that they could be uploaded into the Concordance software for attorney review. (App. at 7.)

[3] Concordance is a discovery management software that allows attorneys to "manage and review the high volume of documents—scanned paper, e-mail and electronic documents—generated during litigation." LexisNexis, *Concordance*, http://law.lexisnexis.com/concordance (last accessed Oct. 21, 2011).

compatible load file.[4] (App. at 12-13.) Thus, instead of converting the responsive documents into a PDF file, AHL has the ability to do as Clark did and work with its vendor to produce documents in a Concordance load file. (*See, e.g.,* App. at 27.)

## ARGUMENT

### I. The Court Should Compel AHL to Make a Reasonably Thorough Inquiry into all Potential Sources or Responsive ESI

Rule 26(g) places an affirmative duty on a responding party to "engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 though 37." *Cache la Poudre Feeds v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D.D.C. 2008). In practice, this means that a responding party must make a *thorough search* for responsive documents with *due diligence* to ensure that it produces all responsive documents in its possession, custody, or control. *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, No. 4:04CV3356, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) (imposing sanctions for failure to identify and produce responsive documents); *see* Fed. R. Civ. P. 26(g); *see also Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 209-10 (N.D. Ind. 1990) (requiring party to make a thorough corporate-wide search for responsive documents).

Significantly, when producing ESI, a thorough search requires the responding party and its attorneys to (i) identify and interview all potential custodians who may possess responsive documents, (ii) inquire about and understand all data storage systems where responsive documents may be maintained, and (iii) implement a systematic procedure for document production and retention. *See, e.g., Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest.*

---

[4] Summation is a program similar to Concordance used to manage and review ESI generated during litigation. *See* AccessData, AccessData E-Discovery Software at a Glance, http://accessdata.com/products/ediscovery-litigation-support (last accessed Oct. 21, 2011). Clark has produced its own ESI to AHL in a Summation-compatible format in accordance with AHL's request.

*Emps. Int'l Union*, 212 F.R.D. 178, 221-24 (S.D.N.Y. 2003) (awarding sanctions for failure to make thorough search).

The fact that AHL has produced only 643 pages of responsive documents, which contain no ESI, demonstrates that AHL and its counsel did not make a *thorough* and *diligent* corporate-wide search. A simple comparison of the documents produced by Clark with those produced by AHL establishes that AHL's production is missing thousands of responsive electronic documents, including emails, word-processed documents, and spreadsheets. (*Compare* App. at 28 with App. at 5.) Specifically, AHL's efforts were not thorough because AHL did not (i) identify and interview all potential custodians who may possess responsive ESI, (ii) search for all backup storage systems where responsive ESI may be maintained, and (iii) implement a systematic procedure for ESI production and retention.

In light of these deficiencies, the Court should order AHL to now undertake a reasonably thorough and corporate-wide search of all the possible sources where AHL maintains responsive ESI. *See, e.g., A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189-90 (C.D. Cal. 2006) (requiring defendant, pursuant to Rule 26(g), to supplement his production of only 666 pages of responsive documents). AHL should (i) identify and produce all responsive ESI possessed by any AHL custodians who may possess responsive ESI, (ii) provide proof that neither AHL nor Allstate maintain any ESI backup storage systems, and (iii) identify all responsive ESI that AHL has lost or destroyed since 2007.

**a. AHL Should Identify and Produce all Responsive ESI Possessed by any AHL Custodians who may Possess Responsive ESI**

At a minimum, a responding party is obligated to distribute discovery requests to *all* employees and agents that *possibly* possess responsive information. *See Metro. Opera*, 212 F.R.D. at 221-22 (imposing sanctions in part for attorney's failure to interview all relevant

employees); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (requiring counsel to circulate, to all employees, a notice of the specific issues involved in the case in order to locate responsive documents). This means that a responding party cannot limit its search for responsive documents to only those employees that it deems most important or to only those who will be integrally involved in the case. *See, e.g.*, *Peskoff v. Faber*, Civil Action No. 04-526, 2006 WL 1933483, at *4 (D.D.C. July 11, 2006) (noting that responsive emails could be in the inbox, sent items, trash, and other folders of email accounts of *other* employees, who may have been the author or recipient); *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 565 (N.D. Cal. 2008) (defendant produced over 1,650 emails from lower-level employees' accounts that were either sent or received by the corporate officer, who produced only 15 emails).

AHL failed to meet these obligations when it chose to interview only those employees whom AHL was likely to use to support its claims or defenses. Specifically, AHL interviewed only the AHL employees who were listed as initial Rule 26 witnesses and who are within AHL's custody. (App. at 12-14.) This means that AHL likely interviewed no more than eight custodians. (*See* App. at 33-36, 37-45.) However, Clark has identified an additional 18 AHL employees who were not listed as initial Rule 26 witnesses, but who likely possess responsive ESI because they were senders and/or recipients of emails exchanged between AHL and Clark.[5] (App. at 13, 16.) Clark raised this issue with AHL in August 2011 (App. at 13), but AHL

[5] Additionally, while reviewing the hard copy documents that AHL produced for copying in Jacksonville, Florida, Clark's counsel has recently identified additional AHL employees who possessed responsive ESI and who were not listed as initial Rule 26 witnesses. For example, Curtiss Sheldon, the Senior Vice President and Chief Actuary, was heavily involved in administering many of the insurance policies at issue in this case. (*See* App. at 46.) Clark has identified numerous emails that Sheldon authored and received from 2003 and earlier, but AHL has produced no communications relating to Sheldon after 2003.

incorrectly responded that it is not obligated to search for any ESI not in the possession of initial Rule 26 witnesses (App. at 3).

In refusing to search the electronic records of any custodians other than initial Rule 26 witnesses within AHL's control, AHL has undoubtedly excluded responsive ESI. As such, the Court should compel AHL to, at a minimum, (i) identify all current and former AHL employees, including the 18 employees Clark has now identified (App. at 13, 16), who may possess responsive documents, including ESI; and (ii) confer with all custodians to identify the locations where they may have maintained responsive ESI and produce all ESI found in those locations. *See Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, No. 09-23411-CIV, 2011 WL 772855, at *5 (S.D. Fla. Feb. 19, 2011) (requiring the additional searches of custodians identified by the requesting party); *McCoy*, 214 F.R.D. at 641 (requiring defendant to contact former employees identified by the plaintiff to determine whether they still possessed responsive documents).

**b. AHL Should Produce Proof that neither AHL nor Allstate Maintains any Backup Storage Systems for ESI**

A responding party cannot ignore otherwise discoverable information simply because it might be costly to produce. *See Zubulake v. UBS Warburg LLC* (*Zubulake I*), 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (explaining that "deleted" emails, which are available only from expensive-to-restore backup media, are nonetheless discoverable). As such, Clark has repeatedly reminded AHL that "deleted" ESI remains discoverable and that AHL should investigate into any backup systems that it maintains. (*See* App. at 7, 13-14.) However, AHL has taken the difficult-to-accept position that neither AHL nor Allstate maintains any backup systems. (App. at 17).[6]

---

[6] Additionally, AHL's position that it maintains no backup storage systems for ESI is undermined by the sheer volume of responsive hard copy documents from 2003 and earlier that AHL maintains in a storage

To support this position, AHL represented that it would provide Clark with a copy of AHL's purported document retention policy, which, according to AHL, would "make clear that no 'back-up system' exists." (App. at 17.) AHL has not provided Clark with its document retention policy or any other proof that supports its position. Accordingly, the Court should order AHL to provide proof that neither AHL nor Allstate maintain any backup storage systems where responsive ESI could potentially be stored.

**c. AHL Should Identify all Responsive ESI that AHL has Lost or Destroyed since 2007**

AHL's unwillingness to disclose any details relating to its litigation hold (App. at 10, 17) supports the conclusion that AHL impermissibly destroyed responsive ESI pursuant to its purported document retention policy. Although AHL will not be penalized for documents that it destroyed "as a result of the routine, good-faith operation of an electronic information system," this safeguard does not extend beyond the point where AHL should have reasonably anticipated litigation.[7] *Zubulake v. UBS Warburg LLC* (*Zubulake IV*), 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *see* Fed. R. Civ. P. 37(e). At that point, AHL was obligated to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake IV*, 220 F.R.D. at 218.

If responsive ESI, including the thousands of email messages exchanged between AHL and Clark, existed at one time but no longer exists, the logical conclusion is that AHL continued

facility in Jacksonville, Florida. These documents include numerous emails exchanged internally among AHL employees and externally between AHL and Clark. (App. at 3.) This suggests that AHL employs a systematic and extensive approach to retaining documents, which, in this day and age, would naturally extend to the retention of ESI.

[7] Importantly, determining "when a duty to preserve arises in a particular case and the extent of that duty requires careful analysis of the specific facts and circumstances." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010).

to destroy responsive ESI beyond 2007, a time when AHL should have known that the ESI would be relevant to reasonably anticipated litigation between AHL and Clark.[8] If AHL continued to destroy responsive ESI beyond 2007, it must disclose that information. *See, e.g.*, *Golden Valley*, 132 F.R.D. at 210-11 (requiring responding party to disclose if any responsive documents had been destroyed). Accordingly, the Court should order AHL to disclose to the Court a description of each document, when it was destroyed, and under what circumstances it was destroyed.

**II. The Court Should Compel AHL to Produce all Responsive ESI in a Format that Includes all Metadata and that is Reasonably Accessible to Clark**

Pursuant to Rule 34(b), a party requesting the production of documents may specify the form in which the documents, including ESI, should be produced. Fed. R. Civ. P. 34(b)(1)(C); *see Covad Comm. Co. v. Revonet, Inc.*, 254 F.R.D. 147, 151 (D.D.C. 2008) (requiring responding party to reproduce emails, which had already been produced in hard copy, in native format as requested). The responding party then has two options: either come to an agreement as to the format in which ESI will be produced or produce ESI "in a form or forms in which it is ordinarily maintained or in a reasonably accessible form." Fed. R. Civ. P. 34(b)(2)(D), 34(b)(E)(2); *see also Romero v. Allstate*, 271 F.R.D. 96, 107 (E.D. Penn. 2010). Additionally, most courts now interpret Rule 34(b) to require parties to produce ESI in native file format with all metadata intact. *See Dahl v. Bain Capital Partners*, 655 F. Supp. 2d 146, 150 (D. Mass. 2009) (requiring spreadsheets to be produced in native Excel format, as they were kept in the usual course of business); *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 656 (D. Kan.

---

[8] While Clark would not have had any reason to anticipate the April 2010 termination of the MSP Agreement, AHL, according to its own allegations, knew as early as 2007 that it was on the cusp of terminating payments worth millions to Clark and therefore should have reasonably anticipated that this act would incite litigation between the parties.

2005) (requiring party to reproduce MS Excel spreadsheets with metadata intact).

AHL violated Rule 34(b) when it disregarded Clark's request and took the position that it would produce documents, including ESI, only in PDF.[9] (App. at 1-2.) At a minimum, AHL was *required* to produce its ESI as native files, as that is the format in which ESI is maintained in the usual course of AHL's business. *See Williams*, 230 F.R.D. at 656. Further, AHL's insistence on producing ESI in PDF would deprive Clark of the opportunity to review important metadata associated with each document. *See id.*

In addition, the Court should require AHL to produce all ESI in a Concordance load file, the format that is reasonably accessible to Clark. Clark notified AHL at the outset that it uses Concordance software to review electronic documents. (App. at 1-2.) Clark even agreed to produce all of its documents, including almost 21,000 electronic documents, in a Summation load file so that AHL could easily review the documents in the software AHL utilizes. (App. at 1-2.) The Court should require AHL to produce its ESI in a Concordance load file not only because it would be equitable, but also because AHL uses Summation to organize and review its own ESI (*see* App. at 12-13) and converting Summation-compatible files to a Concordance-compatible form requires minimal effort and expense. Therefore, the Court should order AHL to produce all ESI as native files in a Concordance load file or, at a minimum, in native file form including all metadata.

---

[9] AHL should be familiar with its obligation to produce all ESI in native file format because its parent company, Allstate, has litigated this very issue in another case. *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Penn. 2010) (requiring Allstate to produce ESI with associated metadata as requested).

## III. If AHL Failed to Make a Reasonably thorough Inquiry for ESI, the Court Should Order AHL to Reimburse Clark's Costs and Attorneys' Fees Incurred in Connection with this Motion and Order Sanctions against AHL and its Counsel for Violating Rule 26(g)

Rule 26(g)(3) requires the Court to impose sanctions against a responding party, its counsel, or both if the Court finds that the responding party failed to use due diligence in searching for responsive ESI. *See Kipperman v. Onex Corp.*, 260 F.R.D. 682, 698 (N.D. Ga. 2009) (explaining that the decision to impose sanctions under Rule 26(g)(3) is not discretionary); *Bd. of Regents*, 2007 WL 3342423, at *5 (imposing sanctions for failing to identify and produce responsive documents); *Metro. Opera*, 212 F.R.D. at 221-24 (awarding sanctions for violating Rule 26(g)). The sanction imposed upon the responding party and its counsel for these violations "may include an order to pay the reasonable expenses, including attorneys' fees, caused by the violations." Fed. R. Civ. P. 26(g)(3).

If the Court finds that AHL's failure to produce any ESI is the result of AHL's failure to undertake a reasonably thorough search, Clark respectfully requests that the Court order AHL to reimburse Clark for its costs and attorneys' fees incurred in bringing this motion and order sanctions against AHL and its counsel for violating Rule 26(g). Additionally, AHL should reimburse Clark for its costs and attorneys' fees because Clark has and will continue to incur costs and attorneys' fees in connection with this motion.[10] *See, e.g., Intagio Corp. v. Tiger Oak Pubs., Inc.*, No. 06-CV-3592, 2007 WL 420245, at *2 (N.D. Cal. Feb. 5, 2007) (awarding $2,000 in fees and costs in bringing a motion to compel production of responsive documents).

[10] If the Court grants Clark's motion to compel the production of ESI and for sanctions, Clark will promptly submit to the Court a full accounting of the costs and attorneys' fees that Clark has incurred in connection with this motion.

**IV. In the Alternative, if AHL Contends that it Possesses no Responsive ESI, the Court Should Compel AHL to Recertify, pursuant to Rule 26(g), that its Document Production is Complete**

If AHL continues to maintain that it has met its discovery obligations and that it has no responsive ESI in its possession, custody, or control, the Court should require AHL and its counsel to recertify in writing, pursuant to Rule 26(g), that AHL's document production was complete and correct as of April 2011 when it was first produced. *See, e.g.*, *Golden Valley*, 132 F.R.D. at 210 (requiring responding party to recertify that it met its discovery obligations). A Rule 26(g) recertification is proper in this case because AHL has not explained how, after a reasonably thorough and diligent inquiry, it has not produced *any* responsive ESI.

**CONCLUSION**

Based upon the foregoing, Clark respectfully requests that the Court grant its Motion to Compel Production of ESI and for Sanctions and enter its Proposed Order, attached hereto as Exhibit A.

Dated: October 21, 2011

/s/ Peter M. Spingola
One of the Attorneys for Plaintiff

Robert A. Chapman
Peter M. Spingola
Sara Siegall
**Chapman & Spingola, LLP**
77 West Wacker Drive, Suite 4800
Chicago, IL 60601
312/630-9202
*Lead Counsel*

Gregory T. Meyer
**Meyer & Colegrove, PLLC**
5700 Granite Parkway, Suite 470
Plano, TX 75024
972-334-0091
I.D. No. 13989800
*Local Counsel*

**CERTIFICATE OF SERVICE**

I, Peter M. Spingola, an attorney, hereby certify that on October 21, 2011, I caused a true and correct copy of PLAINTIFF CLARK CONSULTING, LLC'S MOTION TO COMPEL PRODUCTION OF ESI AND FOR SANCTIONS to be filed with the Clerk of the Court by using the CM/ECF electronic filing system, which will send a notice of electronic filing to counsel of record.

/s/ Peter M. Spingola